16 *United States v. Search of Music City Marketing* No. 99-5260

(6th Cir. 1992), this Court recognized entrapment by estoppel as a defense to criminal prosecution. Because the government has not begun any criminal prosecution of Music City, this defense is not yet appropriate. Under Rule 41(e), the government need not return the seized contraband—regardless of any prior representations regarding the legality of the items.

## IV.

For the foregoing reasons, we AFFIRM the district court's denial of Music City's Fed. R. Crim. P. 41(e) motion for the return of its property.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0164P (6th Cir.)
File Name: 00a0164p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

No. 99-5260

SEARCH OF MUSIC CITY
MARKETING, INC.,
*Appellant.*



Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-03096—Thomas A. Higgins, District Judge.

Argued: March 7, 2000

Decided and Filed: May 12, 2000

Before: MARTIN, Chief Judge; KENNEDY and
SUHRHEINRICH, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Alfred H. Knight, WILLIS & KNIGHT, Nashville, Tennessee, for Appellant. Harold B. McDonough, Jr., ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Alfred H. Knight, Alan D. Johnson, WILLIS & KNIGHT, Nashville, Tennessee,

Hal D. Hardin, LAW OFFICES OF HAL D. HARDIN, Nashville, Tennessee, for Appellant. Harold B. McDonough, Jr., ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

———————————

## OPINION

———————————

KENNEDY, Circuit Judge.  In June of 1998 United States Customs Agents executed a warrant to search the premises of Music City Marketing ("Music City") for drug paraphernalia; seizing various merchandise that they believed qualified as such in the process.  Music City filed a motion in the district court for the return of the seized property pursuant to Fed. R. Crim. P. 41(e).  After conducting a hearing, the court found the majority of the seized items were drug paraphernalia and thus contraband.  As a result, the court denied plaintiff's motion with respect to those items.  Music City appealed, arguing: (1) that the definition of drug paraphernalia contained in 21 U.S.C. § 863 was unconstitutionally vague as applied to the seized items; and (2) that based on prior representations made by United States Customs Officers, it was a violation of due process for the government to seize the items at issue. For the following reasons we affirm the district court's holding that the merchandise was drug paraphernalia that as contraband could not be returned to Music City.

## I.

In 1989, approximately nine years prior to the seizure at issue, United States Customs Officers searched the warehouse used by Music City and its subsidiary Contempo Tobacco Products, Inc., seizing several truck loads of what was determined to be drug paraphernalia. Music City engaged in settlement negotiations with the United States, initially proposing that the government acknowledge that all of the merchandise not seized from the warehouse could be legally sold.  The government declined, and Music City entered into

with drugs in the community.  The court found that Music City had put on no credible evidence refuting the government's contention that the snuff dispensers were used primarily to administer drugs.  With respect to the scales, the court noted that while they were multi-use items, they were housed in a warehouse containing other drug paraphernalia. Based on this evidence, the court concluded that the items at issue were primarily intended or designed for use with controlled substances.  Under these circumstances we cannot say that the district court erred in arriving at this conclusion. *C.f. 57, 261 Items of Drug Paraphernalia*, 869 F.2d at 958–59 (evaluating the evidence considered by the district court and concluding the court had not erred in concluding that the items at issue qualified as drug paraphernalia and thus were properly subject to civil forfeiture under the Customs Statute).

## III.

Music City also argues that based on the government's actions during the seizure of Music City's inventory in 1989, as a matter of due process it could not pronounce the items seized in 1998 to be drug paraphernalia.  Music City places great weight on the fact that after Customs agents seized items from its warehouse in 1989, the government left behind items that were essentially identical to items seized in 1998. Music City also alleges that some Customs agents made statements implying that items remaining in Music City's inventory after the 1989 seizure could legally be sold, at least in the Middle District of Tennessee.  Further, Music City points out that a list of prohibited items was attached to its plea agreement and that none of these items were present in 1998.  Finally, Music City notes that for three years after entering into the plea agreement it sent catalogs containing items seized in 1998 to the Customs office.

Based on these facts, Music City asserts that the criminal doctrine of entrapment by estoppel should prevent the government from categorizing the seized items as drug paraphernalia.  In *United States v. Levin*, 973 F.2d 463, 468

challenge the district court's factual finding that the pipes and other items at issue qualified as drug paraphernalia under the statute. To the extent that Music City has made this argument, we affirm the district court.

After conducting a two day evidentiary hearing, the district court individually evaluated each item at issue in detail. The court considered: descriptive material included with some of the seized items, the fact that Music City's retail stores sold legitimate tobacco products, testimony from multiple witnesses, advertised and actual uses of the items in the community, a treatise defining slang terms, and expert testimony concerning the items' uses. With regard to the pipes, the court credited Custom Agent Mangione's expert testimony as to their use in the community and their design characteristics. Agent Mangione had been involved with drug paraphernalia investigations since 1989 and had extensive training and experience dealing with drug paraphernalia. The court observed that Agent Mangione testified as to the various pipes' design characteristics that were more consistent with marijuana than tobacco use, including an invariably small bowl size, bowl covers without holes, lack of traditional mouthpieces and stems, lack of filters, and the fact that some of the pipes were constructed of material that would become too hot to hold in one's mouth if smoked for any length of time. Similarly, Agent Magione testified that the "dug outs" and "SmokeLess" systems were commonly used in the community to smoke marijuana. Agent Magione also pointed out that the metal or ceramic "bats" included with these items were too small to allow the user to inhale more than a few puffs of smoke and were therefore more consistent with smoking marijuana than tobacco. With respect to the metal screens, the court noted that Agent Mangione testified that they were commonly used in small marijuana pipes to keep seeds and stems from being sucked into the smoker's throat, but were not used in traditional tobacco pipes. Regarding the snuff dispenser components, the court observed that they were seized in conjunction with other drug paraphernalia and Agent Magione testified that he had often observed their use

a plea agreement, acknowledging its guilt and agreeing to the forfeiture of the truckloads of seized merchandise and the payment of a one million dollar fine within six years. Music City did not pay the entire fine as required, but has continued to pay one thousand dollars a month since the plea agreement was reached in 1990. For two to three years following the seizure of items from its warehouse, Music City also sent the local United States Customs Office a catalog of the items it was offering for sale.

In June of 1998, Customs agents once again obtained a search warrant for Music City's premises. Customs agents found items that they believed to be drug paraphernalia, although none of the items seized in 1998 appear to be identical to those found in 1989. The agents seized cigarette holders, various types of small pipes, scales, filter screens, "dugouts," "SmokeLess Smoking Systems," and raw material for snuff dispensers.[1] The approximate value of the seized inventory was $600,000.

Music City filed a motion in the district court for the return of the property under Fed. R. Crim. P. 41(e). The district court conducted a two day evidentiary hearing, viewing exhibits introduced by both the government and Music City and listening to testimony of Customs agents, local police, tabacconists, and executives and employees of Music City. The court found that the seized items were drug paraphernalia as defined in 21 U.S.C. § 863, summarizing its reasoning as follows:

> The Court has considered the relevant criteria set forth in 21 U.S.C. § 863(e), including the descriptive material

---

[1]The "dug outs" and "SmokeLess Smoking Systems" consisted of a hollow wood or plastic box with a covered compartment in which the smoking material could be stored and another covered storage compartment in which a hollow metal or ceramic cigarette shaped "bat" was kept. When the cover was moved to expose the bat, a spring would partially eject it for smoking.

included with some of the seized items, the fact that Music City's retail stores sell legitimate tobacco products, the scope of the legitimate uses of the items in the community, and the expert testimony concerning the items' use. The Court concludes that these items are primarily intended or designed for use with controlled substances and thus are drug paraphernalia as defined by 21 U.S.C. § 863.

Accordingly, the district court issued a memorandum and order denying Music City's Rule 41(e) motion with regard to the majority of the seized items on the basis that Music City's inventory was contraband and thus could not be returned, regardless of whether or not the government properly obtained and executed its search warrant. However, the court did order the return of cigarette holders as well as a plastic tube called a "head rush," thought to be a component that could be used in making a "bong," which the government acknowledged were improperly seized

## II.

### A.

There is no criminal indictment or proceeding pending against Music City. Thus, Music City's Rule 41(e) motion for the return of its property was really in the nature of a civil proceeding invoking the court's equitable powers, rather than a criminal proceeding. *See White Fabricating Co. v. United States*, 903 F.2d 404, 407–08, (6th Cir. 1990) (holding that a district court has jurisdiction to entertain a Rule 41(e) motion for the return of property before a criminal prosecution has begun, believing such a motion to be, in effect, a civil action); *Delta Engineering v. United States*, 41 F.3d 259, 262 n.2 (6th Cir. 1994) (observing that "it is well established in this circuit that courts have jurisdiction to hear Rule 41(e) motions in the absence of criminal proceedings," and citing *White Fabricating Co.* as support for this proposition). The district court found that because Music City would suffer irreparable

*United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 476–77 (S.D.N.Y. 1997) (analyzing a vagueness as applied argument raised against the Wiretap Act and comparing the statute's language with that of the drug paraphernalia statute).

With respect to fair warning, the statute's specificity contradicts Music City's contention that the statute did not provide sufficient guidance to warn of the conduct which it prohibits. Additionally, *Hoffman Estates* undercuts Music City's fair warning arguments. In *Hoffman Estates*, the Supreme Court discussed the "designed for use" phrase that the Village of Hoffman Estates used in a drug paraphernalia statute very similar to the one at issue here. The Court confirmed that the phrase had an objective meaning and observed that no issue of fair warning was present in the case, because, as Flipside conceded, the phrase referred to an item's structural characteristics. *Hoffman Estates*, 455 U.S. at 501, 102 S. Ct. at 1195. Similarly, in the case at bar, it is the items' likely use and structural characteristics that must be evaluated, largely eliminating fair warning as an issue.[8]

Under these circumstances, we conclude that as applied to the items that the district court found to be drug paraphernalia, 21 U.S.C. § 863 provides fair warning of the conduct that is prohibited and sufficiently limits the danger of arbitrary enforcement.

### B.

Music City largely confines its focus to the assertion we addressed above, that the statute was unconstitutional as applied. However, some of Music City's arguments appear to

---

[8] In the case at bar we are confronted with a defendant who dealt in a number of items that clearly qualified as drug paraphernalia. As a result, we need not address whether the statute would sufficiently warn legitimate merchants selling only multiple use items of the conduct that could render such items drug paraphernalia, thereby subjecting them to civil forfeiture.

the objective characteristics of some items, including certain kinds of pipes, establish that they are designed for use with controlled substances, as they have no other use besides contrived ones). Therefore, Music City does not fit the scenario posited by the Supreme Court, that of a legitimate merchant "engaging in the sale of *only* multiple use items." *Id.* at 526, 114 S. Ct. at 1755 (emphasis added).

With respect to Music City's vagueness arguments concerning the Aristocrat snuff dispensers, small gauge mesh screens, variously sized scales, "dugouts," springs used in manufacturing the "dugouts," metal cigarettes (or "bats") used with the "dugouts," and the "SmokeLess System," we conclude that § 863 is not unconstitutionally vague in application. First, with respect to the danger of arbitrary enforcement, the objective factors listed in § 863(e), in conjunction with the definition of drug paraphernalia contained in subsection (d), and the exemption of traditional tobacco products in subsection (f), supplied the detail regarding what items would qualify as drug paraphernalia to adequately limit the danger of arbitrary enforcement with respect to the items seized.[7] *See Posters 'N' Things,* 511 U.S. at 525–526, 114 S. Ct. 1754. While the scales and empty snuff dispensers present the closest question, Music City's sale of drug paraphernalia separates it from merchants dealing solely in multiple-use items in a manner that adequately constrains law enforcement officials from proceeding to seize scales or snuff containers from such merchants. *See id.; Cf.*

---

to largely be contrived. However, because at least the majority of the pipes were not multi-use items, our resolution of the status of the "dug outs" and "SmokeLess System" is not critical to our decision.

[7] Music City complains that the district court gave too much credit to Custom Agent Magione's testimony regarding which items were drug paraphernalia. This argument, however, is addressed to the validity of the district court's finding that the items were drug paraphernalia, rather than whether the statute allows arbitrary enforcement with respect to the seized items.

harm and there was an inadequate remedy at law with regard to the government's retention of the property at issue, it would exercise its equitable jurisdiction to hear the motion. The court correctly observed that under Rule 41(e)[2], the property need not be returned if it was contraband. *See, e.g.,* Fed. R. Crim. P. 41(e) advisory committee note accompanying the 1972 amendments (stating, "the judge in the district of seizure does not have to decide the legality of the seizure in cases involving contraband which, even if seized legally, is not to be returned."). The parties agreed and the court looked to the definition of drug paraphernalia contained in 21 U.S.C. § 863, determining that under the statute most of the items the government seized qualified as drug paraphernalia. The court then denied Music City's motion for the return of its property on the grounds that Music City was not legally entitled to the items at issue.

On appeal Music City does not contend that 21 U.S.C. § 863 is unconstitutionally vague on its face, an argument that appears to be foreclosed by the Supreme Court's opinions in *Posters 'N' Things, LTD. v. United States*, 511 U.S. 513, 114 S. Ct. 1747, 128 L. Ed. 2d 539 (1994) and *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982) as well as this Court's opinion in *United States v. 57,261 Items of Drug Paraphernalia*, 869 F.2d 955 (6th Cir. 1989) (abrogated by

---

[2] Fed. R. Crim. P. 41(e) provides:

A person aggrieved by an unlawful search and seizure of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

*Posters 'N' Things, LTD.*, 511 U.S. 513, 114 S. Ct. 1747, with respect to the intent required for a conviction under 21 U.S.C. § 857). Rather, Music City argues that the statute is unconstitutionally vague as applied to the items of inventory seized by the government in 1998.

The drug paraphernalia statute located at 21 U.S.C. § 863 states:

> (a)   It is unlawful for any person–
>       (1)   to sell or offer for sale drug paraphernalia;
>       (2)   to use the mails or any other facility of interstate commerce to transport drug paraphernalia; or
>       (3)   to import or export drug paraphernalia.

As an aid in determining whether particular items are drug paraphernia, parts (d) and (e) provide detail. Part (d) lists items that generally qualify as drug paraphernalia "per se" and part (e) contains a non-exhaustive list of eight factors to consider while evaluating the items at issue. Parts (d) and (e) read as follows:

> (d)   The term "drug paraphernalia" means any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under this subchapter. It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, or amphetamines into the human body, such as--
>       (1)   metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

implicate vagueness or other due process concerns with respect to such items. Petitioners operated a full-scale "head shop," a business devoted substantially to the sale of products that clearly constituted drug paraphernalia. The Court stated in *Hoffman Estates*: "The theoretical possibility that the village will enforce its ordinance against a paper clip placed next to Rolling Stone magazine ... is of no due process significance unless the possibility ripens into a prosecution." 455 U.S., at 503-504, n. 21, 102 S.Ct., at 1196, n. 21. Similarly here, we need not address the possible application of § 857 to a legitimate merchant engaging in the sale of only multiple-use items.

*Id.* Thus, Music City correctly observes that the Court quite naturally did not address whether the statute would be unconstitutionally vague with respect to the prosecution of a legitimate merchant who sold only multi-use items, an issue not before the Court. Music City attempts to style itself as such a merchant, arguing that at worst some of the items it sold were multi-use items.

Music City is correct in noting that the Supreme Court has expressed some concern about the statute's constitutionality as applied to the seizure of multiple use items such as scales, razor blades, and mirrors from merchants dealing only in multiple use items. However, while Music City did carry multiple use items as well as legitimate tobacco related products, it also carried a wide variety of pipes that based on their design, were only suitable for use with controlled substances.[6] *See id.* at 518, 114 S. Ct. at 1751 (observing that

---

[6]The "dug outs" and "SmokeLess System" likely fall under this category as well, given that their design only allowed a small quantity of smoking material to be loaded into the "bat" for smoking. As the government's expert testified at trial, this only allowed a few puffs per use and was therefore more consistent with marijuana smoking than it was with tobacco smoking. Music City has argued that these products could be used to help reduce tobacco smoking, but such purported use appears

we need not be detained long with Music City's arguments that § 863 is vague as applied to the pipes that the government seized from its warehouse. As the Supreme Court noted, the statute specifically lists pipes designed for use with illegal drugs in subsection (d), provides objective factors to assist in their evaluation in subsection (e), and excludes pipes traditionally used to smoke tobacco in subsection (f). Consequently, while Music City may be unhappy with the district court's conclusion that the various pipes that Customs Agents confiscated were drug paraphernalia, it cannot complain that 21 U.S.C. § 863 was unconstitutionally vague as applied to those pipes.[5]

Music City points out, however, that several of the items seized were the type of multi-use items that the Supreme Court voiced concern about in *Posters 'N' Things*, 511 U.S. at 526, 114 S. Ct. at 1754. In *Posters 'N' Things* the Court stated:

> Section 857's application to multiple-use items—such as scales, razor blades, and mirrors—may raise more serious concerns. Such items may be used for legitimate as well as illegitimate purposes, and 'a certain degree of ambiguity necessarily surrounds their classification.' *Mishra*, 979 F.2d, at 309. This case, however, does not

---

[5] Apparently in an effort to illustrate the statute's vagueness, Music City makes much of the fact that Sergeant Brock, a police officer with the local Vice Squad unit that participated in the raid, did not think that any of the items in the warehouse were drug paraphernalia. Additionally Music City points out that Customs Agent Davis allegedly made some comments that could be construed as sanctioning the sale of the items remaining in Music City's warehouse after the 1989 raid. However, the fact that different minds reach different results when applying the factors to determine if an item qualifies as drug paraphernalia does not necessarily mean that the statute is unconstitutionally vague as applied to that item. *See, e.g., Schneiderman*, 968 F.2d at 1568 (rejecting an argument that 21 U.S.C. § 857 was unconstitutionally vague as applied and noting that while effective law enforcement often requires a degree of police judgment, this alone does not render a statute unconstitutional).

(2)  water pipes;
(3)  carburetion tubes and devices;
(4)  smoking and carburetion masks;
(5)  roach clips: meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;
(6)  miniature spoons with level capacities of one-tenth cubic centimeter or less;
(7)  chamber pipes;
(8)  carburetor pipes;
(9)  electric pipes;
(10)  air-driven pipes;
(11)  chillums;
(12)  bongs;
(13)  ice pipes or chillers;
(14)  wired cigarette papers; or
(15)  cocaine freebase kits.

(e)  In determining whether an item constitutes drug paraphernalia, in addition to all other logically relevant factors, the following may be considered:
(1)  instructions, oral or written, provided with the item concerning its use;
(2)  descriptive materials accompanying the item which explain or depict its use;
(3)  national and local advertising concerning its use;
(4)  the manner in which the item is displayed for sale;
(5)  whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;
(6)  direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise;
(7)  the existence and scope of legitimate uses of the item in the community; and

(8)    expert testimony concerning its use.

21 U.S.C. § 863.

Music City contends that as applied to the items that Customs agents seized in 1998, the statute's definition of drug paraphernalia is unconstitutionally vague. To survive a challenge of unconstitutional vagueness in application, a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement." *Posters 'N' Things,* 511 U.S. at 526, 114 S. Ct. at 1754 (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 222 (1972) and citing *Grayned v. Rockford*, 408 U.S. 104, 108–09, 92 S. Ct. 2294, 2298–99, 33 L. Ed. 2d 222 (1972)).[3]

In evaluating Music City's claims, the Supreme Court's opinion in *Posters 'N' Things* is instructive, as it is the most recent case in which the Court discussed the constitutionality of the drug paraphernalia statute. In *Posters 'N' Things*, police executed a search of defendants' business premises, seizing pipes, bongs, scales, roach clips, and drug diluents. Defendants were subsequently indicted and convicted for, among other things, selling drug paraphernalia in interstate commerce in violation of the drug paraphernalia statute then located at 21 U.S.C. § 857. On appeal one of the arguments defendants raised was that the statute was unconstitutionally vague as applied to the items seized. The Court disagreed, observing that the list of items in § 857(d) that constitute per se drug paraphernalia provided relatively clear guidelines as

---

[3]Music City was subject to a seizure and a civil forfeiture proceeding, rather than a criminal prosecution, potentially reducing concerns of unconstitutional vagueness. *See Hoffman Estates*, 455 U.S. at 498–99, 102 S. Ct. at 1193 (observing that with respect to the degree of vagueness tolerated by the Constitution, "[t]he Court has . . . expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.")

to prohibited conduct. *Id.* at 525, 114 S. Ct. at 1754. With regard to these listed items the Court stated that "there can be little doubt that the statute is sufficiently determinate to meet constitutional requirements." *Id.* at 525–26, 114 S. Ct. at 1754. The Court also noted that § 857(e) set forth objective criteria for assessing whether items constitute drug paraphernalia, minimizing the possibility of arbitrary enforcement and assisting in defining the conduct the statute prohibits. *Id.* at 526, 114 S. Ct. at 1754 (citing *United States v. Mishra*, 979 F.2d 301, 309 (3d Cir. 1992) and *United States v. Schneiderman*, 968 F.2d 1564, 1568 (2d Cir. 1992), which both found that while a certain degree of ambiguity necessarily surrounds the classification of drug paraphernalia, the statute provided constitutionally sufficient guidance). Additionally, the Court observed that § 857(f) exempted items traditionally used with tobacco, "further limit[ing] the scope of the statute and preclud[ing] its enforcement against legitimate sellers of lawful products." *Id.* at 526, 114 S. Ct. at 1754.

Although in the case at bar we address the current drug paraphernalia statute located at 21 U.S.C. § 863, the Supreme Court's analysis of the old statute located at 21 U.S.C. § 857 remains controlling. When Congress recodified the statute it left the language originally contained in § 857 (d)–(f) unchanged, leaving the precedential value of cases interpreting the old statute intact. Therefore, as applied to the items that the Supreme Court addressed in *Posters 'N' Things*, such as pipes not traditionally used for tobacco, bongs, scales,[4] diluents, and roach clips, it is clear that 21 U.S.C. § 863 is not unconstitutionally vague. Given this fact,

---

[4]The Court indicated that the statute was constitutional as applied to the scales at issue in the case before it, which were seized from a "head shop," meaning a store dealing substantially in items that clearly qualified as drug paraphernalia. 511 U.S. at 526, 114 S. Ct. 1754–55. However, the Court also indicated that when multiple-use items such scales are sold by legitimate merchants engaged in the sale of only multiple-use items, more serious vagueness concerns might be raised. *See id.*